

# NUMBER 13-13-00474-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

FRANK J. SCHUSTER, INDIVIDUALLY AND
AS EXECUTOR OF THE ESTATE OF
FRANK SCHUSTER, FRANK SCHUSTER
FARMS, INC., FRANK SCHUSTER FARMS
AND FRANK SCHUSTER FARMS, LTD.,                    Appellants,

v.

KATHLEEN WILD,                                      Appellee.

## On appeal from the Probate Court
## of Hidalgo County, Texas.

## MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Benavides and Longoria**
**Memorandum Opinion on Rehearing by Chief Justice Valdez**

Appellants, Frank J. Schuster, individually and as executor of the estate of Frank

Schuster, Frank Schuster Farms, Inc., Frank Schuster Farms and Frank Schuster Farms,

Ltd., appeal from the trial court's refusal to confirm the arbitrator's order and its vacatur of that award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (West, Westlaw through 2013 3d C.S.) ("A party may appeal a judgment or decree entered under this chapter or an order . . . confirming or denying confirmation of an [arbitration] award[.]"). By two issues, appellants contend that appellee, Kathleen Wild, did not meet her burden of showing that the arbitrator exceeded his power.[1] On July 31, 2014, we issued a memorandum opinion and judgment in this cause, wherein we reversed the judgment and rendered a confirmation of the arbitrator's award. *Schuster v. Wild*, 13-13-00474-CV, 2014 WL 3804834, at *6 (Tex. App.—Corpus Christi July 31, 2014, no. pet. h.). On August 14, 2014, appellants filed a motion for rehearing requesting that the Court remand the cause to the trial court so that it can confirm the arbitrator's award. After reviewing appellants' motion for rehearing, we grant it, withdraw our previous memorandum opinion and judgment, and substitute this memorandum opinion and judgment in their place.[2] Accordingly, we reverse the trial court's order vacating the arbitration award and remand the cause to the trial court.

## I.  BACKGROUND

Frank Schuster died in 1977, leaving an estate that included land, mineral interests, stock in a farming corporation, and other personal property. According to Wild, disputes arose during the administration of the deceased's estate, and on April 29, 1986,

---

[1] Wild is one of the deceased's daughters.

[2] On August 18, 2014, this Court requested that Wild file a response to appellants' motion for rehearing. Wild filed a response on September 24, 2014. *See* TEX. R. APP. P. 49.2 (setting out that we may not grant a motion on rehearing without first requesting a response from the other party).

2

all interested parties entered into four agreements "to effect a full and final partition of the property of the Estate[:] a Family Agreement, an Addendum to Family Agreement (the "Family Agreement"), an Arbitration Agreement and an Addendum to Arbitration Agreement. The Four (4) documents all together express the intention and agreement of the parties and are to be construed and considered together [(the "Settlement Agreement")]."

Due to further disputes regarding the Settlement Agreement, the cause went to arbitration with the arbitrator Thomas Latter.[3] Latter issued his "Report and Decision of Arbitration" dated December 15, 1986 (the "Latter Arbitration"). Latter's report and decision were confirmed by the County Court at Law No. 2 of Hidalgo County, Texas in 1987. However, according to Wild, more than two decades later, the parties discovered that certain properties were not explicitly addressed by Latter's Report and Decision.

According to Wild, administration of the deceased's estate was not closed after the Latter Arbitration, and the parties could not agree upon the proper distribution of the assets from the deceased's testamentary trust. Appellants filed suit in the Hidalgo County Probate Court, and Wild filed a suit in the district court. The two cases were consolidated in the probate trial court, which according to appellants, "ordered 'the parties to arbitrate the disputes set out in the parties' pleadings in the consolidated cause as the issues stated therein are within the scope of the arbitration agreement found in the Family Agreement.'" In a rule 11 agreement, the parties agreed to arbitrator J. Scott McLain. According to appellants, the parties further agreed that "[o]nce the arbitrator [made] his

---

[3] The Latter Arbitration is not at issue in this appeal.

3

decision on the issues, the parties [would] be entitled to have the Court enter an award confirming the arbitration."

The second arbitration hearing, (the "McLain Arbitration"), which is the subject of this appeal, was held on August 28 and 29, 2012. Wild states that McLain "took no evidence at the hearing on other issues in the Wild's pleadings including attorney's fees." According to appellants, the McLain Arbitration involved numerous parcels of real property not explicitly addressed by Latter's Report and Decision. Appellants contended that the deceased and his wife, Helen B. Schuster, intended to convey those properties to Frank Schuster Farms, Inc., prior to the death of the deceased. Wild, on the other hand, contended that those properties had not actually been conveyed to Frank Schuster Farms, Inc. and that, therefore, Latter's Report and Decision did not explicitly address them. Thus, according to Wild, those properties were part of "the Estate of Frank Schuster," and she is entitled to an undivided interest in them as an heir to his estate.

Appellants claim that the McLain Arbitration also dealt with "the minerals in, on or under" certain properties owned or claimed by Frank Schuster Farms, Inc. Appellants state in their brief that during the McLain Arbitration, Wild claimed that she was entitled to a share of those mineral interests. Appellants countered that those mineral interests belonged to Frank Schuster Farms, Inc. and that any claims made by Wild to those mineral interests were barred by the statute of limitations.

McLain entered an award (the "McLain Arbitration Award") in favor of appellants, which included title to various properties, and determined that the mineral interests to those properties belonged to Frank Schuster Farms, Inc. On October 9, 2012, appellants filed a motion to confirm the arbitration award in the trial court; however, Wild filed a

4

motion to vacate the McLain Arbitration Award on the basis that McLain exceeded his powers. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088 (West, Westlaw through 2013 3d C.S.).

The trial court then held a hearing on March 26, 2013, to determine whether McLain exceeded his powers as alleged by Wild. At this hearing, appellants' attorney stated that a two-day evidentiary arbitration hearing was held by McLain and then asked the trial court to confirm McLain's Arbitration Award. Appellants' attorney argued that because no record existed regarding the arbitration proceeding, the trial court must make all assumptions in favor of the ruling. Appellants' attorney stated that it was Wild's burden to bring forth a record showing that McLain exceeded his authority and that she could not do so without the reporter's record, which included all of the exhibits McLain considered. Stating that it would consider the parties' extensive briefing and listed authorities on the matter, the trial court took the matter under advisement. Throughout her motion to vacate, Wild cited Latter's Report and Decision for her contention that McLain exceeded his powers by awarding the mineral interests to appellants. Wild did not claim that the arbitration agreement between her and appellants did not authorize McLain to determine who owned the mineral interests of the disputed properties.

On August 6, 2013, the trial court denied appellants' motion to confirm the McLain Arbitration Award on the sole basis that McLain "exceeded his authority by awarding mineral interest[s] to [appellants] that were not even requested by [them], thereby exceeding his authority."[4] The trial court ordered a rehearing before a new arbitrator

---

[4] The grounds for vacating an arbitrator's award are limited to those set out in section 171.088, which states in pertinent part that "[o]n application of a party, the court shall vacate an award if" the

5

chosen in accordance with the agreement to arbitrate. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (allowing an appeal from the denial of a motion to compel arbitration).

## II.   STANDARD OR REVIEW AND APPLICABLE LAW

"An arbitration award is given the same effect as a judgment of last resort and all reasonable presumptions are indulged in favor of the award and none against it." *Black v. Shor*, No. 13-11-00413-cv, __ S.W.3d __, 2013 WL 1687537, at *3 (Tex. App.—Corpus Christi 2013, pet. denied). Therefore, our review of a trial court's decision to vacate or confirm an arbitration award is de novo, and we review the entire record. *Id.* (citing *Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 583, 591 (Tex. App.—Texarkana 2009, pet. denied); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 17 (Tex. App.—Corpus Christi 2010, no pet.); *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied)). "Although we review de novo a trial court's judgment confirming an arbitration award, we give 'strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution.' Our review focuses on the integrity of the process, not the propriety of the result." *Id.* at *3 (citing *Centex/Vestal*, 314 S.W.3d at 683; *Xtria L.L.C.*, 286 S.W.3d at 591).

An arbitrator has broad discretion in fashioning an appropriate remedy. *Roe v. Ladymon*, 318 S.W.3d 502, 523 (Tex. App.—Dallas 2010, no pet.). An arbitrator's award

---

arbitrators exceeded their powers. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088 (West, Westlaw through 2013 3d C.S.). The trial court vacated the arbitrator's award on the sole basis that McLain exceeded his powers. *See id.*

is "legitimate only so long as it draws its essence" from the parties' agreement. *United Steelworkers of Am. v. Enter. Wheel & Car. Corp.*, 363 U.S. 593, 597 (1960); *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 830 (Tex. App.—Dallas 2009, no pet.). In order to draw its essence from the agreement, the arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the . . . agreement. . . . [T]he award must, in some logical way, be derived from the wording or purpose of the contract." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994); *see Ancor Holdings*, 294 S.W.3d at 830.

However, "[w]here an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 406 (5th Cir. 2001) (quoting *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL–CIO*, 889 F.2d 599, 602 (5th Cir. 1989)). An arbitrator exceeds his powers when he decides matters not properly before him by departing from the arbitration agreement, "and, in effect, dispenses his own idea of justice [such] that the award may be unenforceable." *Centex/Vestal*, 314 S.W.3d at 684 (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). "To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement." *Allstyle Coil Co., L.P. v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003)); *see Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 707 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (determining that the arbitrator exceeded his powers in issuing award against party not subject to arbitration). "The single question is whether the award, however arrived at, is rationally inferable from the contract." *Anderman/Smith*

7

*Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n.3 (5th Cir. 1990); *see Ancor Holdings*, 294 S.W.3d at 829 ("The award must be derived in some way from the wording and purpose of the agreement, and we look to the result reached to determine whether the award is rationally inferable from the contract.").

When determining whether an arbitrator has exceeded his powers, any doubts concerning the scope of what is allowed should be resolved in favor of arbitration. *See Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.). "A mistake of fact or law in the application of substantive law is insufficient to vacate an arbitration award." *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex. App.—Fort Worth 2006, no pet.) (citing *Vernon E. Faulconer, Inc. v. HFI, Ltd. P'ship*, 970 S.W.2d 36, 39 (Tex. App.—Tyler 1998, no pet.); *J.J. Gregory Gourmet Servs. v. Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995, no writ)). "An arbitration award has the same effect as the judgment of a court of last resort; therefore, all reasonable presumptions are indulged in favor of the award, and the award is conclusive on the parties as to all matters of fact and law." *Id.*

### III.  MCLAIN'S AUTHORITY

The issue before us is whether the trial court properly vacated the McLain Arbitration Award on the basis that McLain exceeded his powers. By their first and second issues, appellants argue that Wild did not show that McLain exceeded his powers. We agree.

### A.  Failing to Consider and Rule on Issues Ordered by the Trial Court

Wild argues that the trial court properly vacated the McLain Arbitration Award on the basis that McLain exceeded his powers by not considering her various claims against

8

appellants. According to Wild, the trial court ordered the parties to arbitrate her "claims for an accounting, conversion, fraud, unjust enrichment, judgment for quitclaim deed, mineral deeds, order prohibiting Executor from alienating estate mineral properties and ordering [appellants] to defend adverse possession claims, breach of contract, and breach of fiduciary duty." Wild states that McLain, however, limited the arbitration to two issues, which did not include any of her claims.

However, we conclude that the evidence presented to the trial court does not support such a conclusion. In his Arbitration Award, McLain stated, "Generally speaking, the disputes before the arbitrator stem from two separate issues." The McLain Arbitration Award then stated, "The first issue involves numerous parcels of real property not explicitly addressed by Mr. Latter's Report and Decision (described in detail in the Arbitrator's Decision as Section A properties)," and "[t]he second issue pertains to the minerals in, on or under certain properties owned by Frank Schuster Farms, Inc., (described in detail in the Arbitrator's decision as Section B Mineral Rights)." The McLain Arbitration Award then set out McLain's decision regarding ownership of the disputed properties and their mineral interests. We conclude that by making this general statement, McLain did not limit the arbitration to the determination of ownership of the mineral interests and the property.[5] We construe McLain's statement as summarizing the

---

[5] It appears that the trial court also determined that McLain's statement did not prove that he limited the evidence during the McLain Arbitration to limit Wild's claims. Regarding McLain's statement, the trial court said, "What does the word 'generally speaking,' how is that to be interpreted? If he says this only involves two disputes, two separate issues, I could see that [would] be a stronger argument for you, but when he says, 'generally speaking,' that seems to be just kind of in general, in summary. I mean he doesn't really say that he's not considering all the issues." Thus, we disagree with Wild that the trial court found that McLain exceeded his powers on that basis.

9

evidence that had been presented to him at the arbitration hearing. We cannot construe McLain's statement as evidence that he limited the arbitration to two issues only and failed to allow Wild to present evidence regarding her other claims against appellants.

Moreover, after a two-day hearing, McLain ruled that "Wild is not entitled to damages and therefore no second hearing will be necessary" and that "[a]ll claims made by the parties to this litigation and not specifically addressed in the Arbitrator's rulings set forth above are denied." Thus, McLain ruled that Wild should not prevail on any of her claims against appellants.

Finally, without a transcript of the arbitration proceedings, we are required to presume that the evidence adequately supported the McLain Arbitration Award, including his denial of Wild's claims. *See Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.) (establishing that "[w]hen a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award" and when no transcript of the proceedings exist the appellate court must presume that the evidence supports the arbitrator's award); *see also Willms v. Ams. Tire Co., Inc.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied) ("[W]hen an appellant fails to bring a reporter's record, an appellate court must presume the evidence presented was sufficient to support the trial court's order."). Based upon our de novo review, we cannot conclude that the evidence established that McLain failed to consider and rule on issues ordered by the trial court. Thus, the trial court could not have found that McLain exceeded his authority on that basis.

10

**B.**     **Attorney's Fees**

In response to appellants' claim that she did not demonstrate that McLain exceeded his powers, Wild argues that McLain exceeded his powers by awarding attorney's fees to appellants without evidentiary support.[6]  Again, without a transcript of the arbitration proceedings, we must presume that the evidence supported McLain's ruling.  *See Statewide Remodeling, Inc.*, 244 S.W.3d at 568; *see also Willms*, 190 S.W.3d at 803.  Here, we must presume that the evidence supports McLain's determination that appellants were entitled to $75,000 in attorney's fees.  Thus, upon our de novo review, we cannot conclude that the trial court properly vacated McLain's arbitration award on the basis that McLain exceeded his powers by awarding attorney's fees.

**C.**     **Award of the Mineral Rights**

Appellants argue that McLain did not exceed his powers by awarding the mineral interests to them.  Wild claims that the "[t]he separate property mineral interests and one-half of the community mineral interests of Frank Schuster passed through his will to a trust which upon termination were to pass in equal shares to his three children, Kathleen Wild ([a]ppellee), Frank Schuster ([a]ppellant) and Frances Rebecca Schuster."  However, whether the mineral interests passed through the will or were conveyed to Frank Schuster Farms, Inc. is a question of fact that McLain must have determined in

---

[6] Wild did not contend to the trial court that McLain was barred by the Settlement Agreement from awarding attorney's fees.  Instead, she complained that the evidence that appellants relied on for support of attorney's fees had been redacted and thus was insufficient to support the award.  However, appellants' attorney informed the trial court that he had testified at the McLain Arbitration, and we have no record of that proceeding.  Accordingly, we are required to presume that the evidence presented to McLain supported the award of attorney's fees.  *See Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.); *see also Willms v. Ams. Tire Co., Inc.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied).

favor of appellants.  *See Pheng Invs.,* 196 S.W.3d at 329 ("A mistake of fact or law in the application of substantive law is insufficient to vacate an arbitration award.").  And we are required to presume that the evidence supports McLain's award of the mineral interests. *See Statewide Remodeling, Inc.*, 244 S.W.3d at 568; *see also Willms*, 190 S.W.3d at 803.

Moreover, if McLain awarded property within the scope of the arbitration agreement, he did not exceed his powers.  *See Centex/Vestal*, 314 S.W.3d at 684.  Wild did not allege to the trial court that the properties at issue were not subject to the arbitration agreement.  Wild's challenge to McLain's Arbitration Award was instead that McLain decided the issues incorrectly.  However, "[a] complaint that the evidence does not support the arbitrator's award . . . is not a complaint that the arbitrator exceeded his powers." *Pheng Invs., Inc.*, 196 S.W.3d at 330.  Thus, even assuming, without deciding, that McLain's decision is incorrect, this does not support a conclusion that he exceeded his powers.  *See id.* at 329 (providing that a mistake of fact or law does not support a claim that the arbitrator exceeded his powers).

Finally, the Texas Supreme Court has stated that the "authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication."  *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959).  Here, the arbitration agreement stated that "[a]ll disputes and controversies of every kind and nature between the parties hereto arising out of or [in] connection with" the Settlement Agreement would go to arbitration.  The Settlement Agreement included the properties at issue in this case.  The arbitration agreement allowed for arbitration of any disputes between the parties not only arising out the Settlement Agreement, but also required arbitration of any disputes *in connection with*

12

the Settlement Agreement. Thus, we conclude that any disagreement regarding ownership of those properties, including ownership of the mineral estates, which are connected with the properties, was subject to arbitration.[7] In addition, Wild asked McLain to award the mineral interests in the properties to her. We sustain appellants' first and second issues.

## IV. CONCLUSION

We reverse the trial court's order vacating the arbitrator's award and remand to the trial court for proceedings consistent with this memorandum opinion.

                                                       _____

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
15th day of January, 2015.

---

[7] We note that at the hearing to vacate the arbitrator's award, Wild's trial attorney acknowledged that at the McLain Arbitration, each party presented evidence regarding who owned the mineral rights to the disputed properties.

13